1

2

3

4

5

6

7                    **UNITED STATES DISTRICT COURT**

8                       **DISTRICT OF NEVADA**

9

10   UNITED STATES OF AMERICA,            3:95-CV-00757-HDM

11              Plaintiff,

12       and                              ORDER

13   PYRAMID LAKE PAIUTE TRIBE OF
     INDIANS,
14
                Intervenor-Plaintiff,
15
         v.
16
     BOARD OF DIRECTORS OF THE
17   TRUCKEE-CARSON IRRIGATION
     DISTRICT, individually and as
18   Representatives of the Class of
     all Water Users in the Newlands
19   Reclamation Project; TRUCKEE-
     CARSON IRRIGATION DISTRICT,
20
                Defendants,
21
         and
22
     STATE OF NEVADA, Department of
23   Conservation and Natural
     Resources, Division of Wildlife
24   and Division of State Lands;
     CHURCHILL COUNTY; DODGE
25   BROTHERS AND DOGE JR. FAMILY
     TRUST; DAVID P. HARRIGAN;
26   GEORGE AND SHELLY RAE
     RAKURSHIN; WILLIAM D. AND
27   GWENDOLYN WASHBURN; MARVIN
     WEISHAUPT; HOWARD D. WOLF
28   FAMILY TRUST; RAY CONLAN;

1

CORKILL BROS., INC.; CALVIN R.
MOFFITT AND CANDACE J. MOFFITT;
BELL FAMILY TRUST; LARRY L.
FRITZ FAMILY TRUST; DAVID L.
MATLEY AND CHRISTINE L. MATLEY
FAMILY TRUST AND DAVID MATLEY;
HAROLD G. AND RHONDA JOHNSON
AND JOHNSON FAMILY TRUST; A&A
DAIRY; JOYCE LOHR; PERALDO
BROTHERS; STILLWATER FARMS,
INC.; CHARLES P. FREY, JR. AND
DEBRA S. FREY; NORMAN W. FREY;
FALLON-PAIUTE SHOSHONE TRIBE,

     Intervenor-Defendants.
_____/

On April 20, 2009, the Court of Appeals entered an order largely affirming this court's decision of December 3, 2003, but vacating and remanding for recalculation of the recoupment for the years 1974, 1975, 1978, 1979, and 1980. On October 6, 2011, this court entered its order calculating the total amount subject to recoupment for those years to be 309,480 acre feet. The court did not recalculate and include recoupment for four additional years – 1973, 1976, 1985, and 1986 – as they were not included in the Court of Appeals' mandate.

On July 22, 2013, the Court of Appeals withdrew and amended its original mandate to include recoupment for any excess diversions in 1973, 1976, 1985, and 1986, subject to this court's consideration of Truckee-Carson Irrigation District's ("TCID") argument that an alternative basis exists for denial of recoupment in 1985 and 1986. The Court of Appeals stated:

> With regard to 1985 and 1986, there may be merit to TCID's contention that there is an alternative ground in the record for the district court's finding that recoupment was unavailable or limited for those years, namely, deviation from the OCAP authorized by court order. We leave to the district court to determine whether, and to what extent, this consideration affects the recoupment available for 1985 and 1986. . . .

2

1   *United States v. Bd. of Directors of Truckee-Carson Irr. Dist.*, 723
2   F.3d 1029, 1035 (9th Cir. 2013).

3       On January 29, 2014, this court issued its order determining
4   that the amount subject to recoupment for 1973 was 23,224 acre
5   feet, and the amount subject to recoupment for 1976 was 3,204 acre
6   feet.  The court then directed the parties to submit further
7   briefing to address the issue of whether, and to what extent, court
8   orders may have impacted plaintiffs' entitlement to recoupment for
9   1985 and 1986.  Specifically, the court asked the parties to
10  address any orders in existence that pertain to the rights to use
11  water in 1985 and 1986, as well as the court's earlier holdings
12  that (1) the OCAPs are "subordinate to the Orr Ditch and Alpine
13  Decrees . . . [and] any orders or judgments issued pursuant to the
14  Nevada District Court's continuing jurisdiction in those cases
15  necessarily would supercede any inconsistent terms of the OCAP";
16  (2) any changes to the 1973 OCAP require either the Tribe's written
17  agreement or court approval; and (3) "the evidence [at trial]
18  established that in 1985 and 1986 the decree court entered orders
19  with regard to diversions by the Federal Water Master for water
20  spreading and diversions in 1985 and 1986 that take precedence over
21  any interim OCAPs for those years and any diversions or deliveries
22  that occurred under court orders are not properly a part of any
23  recoupment calculation."

24      On August 1, 2014, TCID filed its brief in response to the
25  court's order (#838).[1]  The government and Pyramid Lake Paiute
26  Tribe of Indians ("Tribe") filed their joint response on September

27

28          [1] The State of Nevada also filed its own brief in response to the
    court's order, and the City of Fallon joined in TCID's brief.

1  29, 2014 (#843).   TCID filed a reply on November 13, 2014 (#848).[2]

2      This order is issued for the limited purpose of responding to

3  the Ninth Circuit's mandate to the district court to determine the

4  amount of water subject to recoupment for the years 1985 and 1986.

5  In all other respects, the earlier orders of the court, including

6  the conclusion that the State of Nevada and the individual water

7  users are not responsible for repayment of water, are reconfirmed.

8  **Discussion**

9      In its 2003 decision, the court concluded that any OCAP issued

10 by Reclamation are "subordinate to the Orr Ditch and Alpine Decrees

11 . . . [and] any orders or judgments issued pursuant to the Nevada

12 District Court's continuing jurisdiction in those cases necessarily

13 would supercede any inconsistent terms of the OCAP."   While the

14 court concluded that the interim OCAPs in effect in 1985 and 1986

15 were valid and binding on TCID, it also concluded that "[t]he

16 evidence established that in 1985 and 1986 the decree court entered

17 orders with regard to diversions by the Federal Water Master for

18 water spreading and diversions in 1985 and 1986 that take

19 precedence over any interim OCAPs for those years and any

20 diversions or deliveries that occurred under court orders are not

21 properly a part of any recoupment calculation."   The following

22 court orders are germane to the determination of the amount of

23 water, if any, that is subject to recoupment for 1985 and 1986.

24      On January 15, 1985, Judge Craig entered an order allowing

25

26      [2] To its reply, TCID attached the declaration of Walter Winder, which
27 the government and Tribe have moved to strike (#850).   In a separate order,
   the court grants the motion to strike, and therefore Winder's declaration
28 and the portions of the reply brief that rely on it have not been considered
   by the court.

diversions into the Truckee Canal for the Newlands Project. Specifically, the order stated:

> On September 26, 1984, the Bureau of Reclamation, through the Department of the Interior, stopped diversions into the Truckee Canal for the Newlands Project. The Water Master has been requested by owners of water rights in the Newlands Project to begin diversions into the Truckee Canal pursuant to the terms of the Final Decree entered September 8, 1944, herein, for storage for use during the 1985 irrigation season.  GOOD CAUSE APPEARING, the Water Master, GARRY STONE, is hereby authorized to commence diversions to the Newlands Project pursuant to the Final Decree entered September 8, 1944.

(Doc. #745-3 at 7).

On October 28, 1985, Judge Thompson entered an order stating that in light of a motion by the Justice Department for approval of interim OCAP, "certain orders [we]re necessary to maintain the status quo."  (Doc. #745-3 at 9).  He ordered that "[p]ending this court's ruling on the above-referenced motion of the Justice Department . . . diversions of Truckee River water to Lahontan Reservoir as authorized by the Watermaster pursuant to the January 15, 1985, Order of Judge Walter E. Craig entered in the case of United States v. Orr Water Ditch Co., Equity No. A-3, shall be permitted."  *Id.* At 9-10.  He further ordered that TCID "shall be permitted to deliver irrigation water during the period of November 1, through November 15, of this year to project farmers who have planted winter grain and/or new fall seedings of alfalfa on their project water right lands."  *Id.* at 10.  Finally, he ordered that any disputes over what lands should be classified bench or bottom were to be initially submitted to and decided by the Watermaster, and that "[p]ending resolution of those disputes by the Watermaster and, if review of his decision is requested, by the court in those proceedings, the status quo shall be maintained and

5

1  [TCID] shall deliver the historical deliveries to those lands as

2  shown on its bench and bottom maps." *Id.*

3       On November 15, 1985, Judge Thompson conducted a hearing at

4  which he approved the interim OCAP "to the extent that they are

5  applicable during the period from this date, until March 15, 1986."

6  (Tr. Ex. 43; Doc. #748-5 at 2).  The OCAP approved by Judge

7  Thompson's order incorporated Reclamation's bench/bottom maps, not

8  TCID's.  (Doc. #843-1 at 43 (Tr. Ex. 43 at 5)).

9       On March 13, 1986, Judge Thompson entered a "water spreading"

10 order that stated:

11       During the 1986 irrigation season water released from
         Lahontan Reservoir and spread on project lands with the
12       consent of the water user by TCID to avoid or minimize
         damages to downstream properties from flooding on the
13       Carson River shall not be considered as irrigation
         releases nor charged to the project farmers' 3.5 or 4.5
14       acre feet per acre decreed entitlement.

15 (Tr. Ex. 1305; Doc. #843-2 at 46).

16 **I. The 1985 Diversions**

17      Considering the procedural history outlined above, the court

18 concludes that court orders in effect in 1985 authorized deviation

19 from any and all OCAPs from January 15, 1985, until November 15,

20 1985.  Beginning on January 15, 1985, Judge Craig's order

21 authorized diversions during the 1985 irrigation season pursuant to

22 the 1944 Final Decree.  Any interim OCAP in existence on January

23 15, 1985, was superceded by Judge Craig's order of January 15,

24 1985. This court's prior holding that orders entered by the decree

25 court supersede inconsistent terms of the OCAP holds true whether

26 the OCAPs existed at the time of the court order or whether they

27 were subsequently adopted.  Thus, following Judge Craig's order

28 until its expiration, modification, or termination, diversions were

6

controlled by the 1944 Final Decree and were not subject to any term of existing or subsequently adopted OCAP that was inconsistent with the 1944 Decree.

On October 28, 1985, Judge Thompson entered his order confirming and continuing Judge Craig's order and authorizing diversions pursuant to the 1944 Final Decree.  At that time, Judge Craig's order was still in effect.  The court so concludes for two reasons.  First, no party has pointed to any court order or other evidence showing that Judge Craig's order had been modified or vacated prior to that time.  Second, Judge Thompson's order was entered to "maintain the status quo."  In so holding, Judge Thompson was reaffirming Judge Craig's order as effective until the new interim OCAP was approved.

On November 15, 1985, Judge Thompson entered his order approving the new interim OCAP.  The court concludes that Judge Thompson's approval of the new interim OCAP had the legal effect of terminating Judge Craig's order authorizing deviations from the OCAPs.[3]

Therefore, the court concludes that diversions from January 15, 1985, to November 15, 1985, were controlled not by the OCAPs but by the 1944 Final Decree.  Accordingly, TCID is not liable for any excess diversions under the OCAPs between January 15, 1985, and November 15, 1985.  After November 15, 1985, the court had approved Reclamation's OCAP, and thus any excess diversions between January 15, 1985, and March 13, 1986, would be subject to recoupment.

---

[3] TCID has represented that the irrigation season had concluded by November 15, 1985.  Judge Craig's order would have also expired by its own terms on that date at the end of the 1985 irrigation season.

7

**II. The 1986 Diversions**

    **A. Water Spreading**

The OCAP approved by Judge Thompson was in effect from November 15, 1985, to March 16, 1986. However, in February 1986, substantial rains threatened flooding on the Carson River. (See Doc. #843-3 (Tr. Ex. 1635 App'x 2 & 3)). In response to a request from TCID, Judge Thompson entered an order on March 13, 1986, allowing waters to be released from Lahontan Reservoir in order to avoid flooding on the Carson River. The order is written broadly to allow releases from Lahontan Reservoir regardless of whether those waters came from the Truckee River or the Carson River. The record reflects, and the parties do not dispute, that precautionary drawdowns to avoid flooding had ceased by the end of June 1986. (Doc. #843-3 at 27-28, 57–58 (Tr. Ex. 1635 at 24 & App'x 2 at 2-2)).

Judge Thompson's order allowed the release of water from Lahontan Reservoir to users in the Newlands Project and provided that said water would not count against their entitlements. The order was in effect from the date it was issued on March 13, 1986. While the order by its terms did not expressly exempt TCID from the OCAP entirely, it had the effect of doing so, at least until the drawdowns had ceased, because neither party disputes that Reclamation's recordkeeping did not distinguish between water released to avoid flooding and normal irrigation deliveries during this period of time, making it impossible to factually determine whether there were any excess diversions subject to recoupment from March 13, 1986 to the end of June 1986. This finds support in Binder's report. *Id.* The government and the Tribe bear the burden

1    of establishing whether and to what extent there were any excess
2    diversions.  For the period March 13, 1986, to the end of June
3    1986, they have failed to establish quantifiable amounts of excess
4    diversions and are therefore not entitled to any recoupment during
5    that period.  This conclusion does not, however, preclude the
6    government and Tribe's entitlement to recoupment between January 1,
7    1986, and March 13, 1986, and after the drawdowns had ceased
8    between July 1, 1986, and the end of 1986.

9        **B. Bench/Bottom Maps**

10       Finally, with respect to the 1986 irrigation season, TCID
11   argues that under Judge Thompson's October 28, 1985, order, TCID's
12   bench/bottom maps controlled and that under TCID's maps there were
13   no excess diversions that year.

14       Judge Thompson's October 28, 1985, order provided that TCID's
15   bench/bottom maps would control pending the resolution of any
16   dispute over which lands should be classified bench or bottom.
17   However, on November 15, 1985, Judge Thompson approved interim OCAP
18   that employed Reclamation's maps.  Judge Thompson's approval of
19   interim OCAP using Reclamation's maps had the legal effect of
20   terminating his prior order requiring TCID's maps to be used.
21   Accordingly, the court finds TCID's argument that recoupment
22   amounts should be adjusted because their maps actually controlled
23   in 1986 to be without merit.

24   **IV. Amount Subject to Recoupment**

25       For the reasons set forth above, the court concludes that
26   under the applicable court orders, diversions made between January
27   15, 1985, and November 15, 1985, and March 13, 1986, and July 1,
28   1986, are not subject to recoupment.  Diversions in excess of the

1  OCAPs are subject to recoupment for the periods January 1, 1985,
2  through January 15, 1985, November 15, 1985, to March 13, 1986, and
3  from July 1, 1986, through the end of 1986.[4]

4       On the basis of the court's findings, and without waiving any
5  rights, the parties shall have forty-five days from the date of
6  this order in which to meet and confer and attempt to provide to
7  the court a stipulation as to the total amount of recoupment that
8  should be ordered consistent with this order.  In the event the
9  parties cannot agree on a stipulated amount of excess diversions
10 and entitlement to recoupment for the relevant time periods set
11 forth in this order, the parties shall so advise the court.  The
12 court will then set a briefing schedule on the amount of excess
13 diversions, if any, each party believes should be subject to
14 recoupment for the above-designated time periods.

15      **IT IS SO ORDERED.**

16      DATED: This 11th day of May, 2015.

17

18                                    Howard D McKibben
                                      _____
19                                    UNITED STATES DISTRICT JUDGE

20

21

22

23

24

25

26

27
        [4] The court notes that the record reflects that no diversions were
28 occurring between January 1, 1985, and January 15, 1985, and that the
   irrigation season had ended by November 15, 1985.