UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 3:95-cv-00757-MMD |
| Plaintiff, | ORDER |
| v. | |
| BOARD OF DIRECTORS of the TRUCKEE-CARSON IRRIGATION DISTRICT, individually, and as Representatives of the Class of all Water Users in the Newlands Reclamation Project, *et al.,* and the TRUCKEE-CARSON IRRIGATION DISTRICT, | |
| Defendants. | |

**I.    SUMMARY**

The Court previously found that Defendant Truckee-Carson Irrigation District ("TCID") wrongfully diverted water from the Truckee River in excess of allowable amounts and was liable for restitutionary recoupment, *i.e.* paying back the water it wrongfully took. (ECF No. 423 at 27-29.) Following three appeals including partial remands, the Court entered the Third Amended Judgment ("TAJ") (ECF No. 992) specifying that TCID must repay the 344,208 acre-feet of water it owes by not diverting water from the Truckee River it could otherwise divert over the course of 20 years. (*Id.*) Under the TAJ, the appointed Water Master, Chad Blanchard, is responsible for certifying the amount of water TCID repays each year. (*Id.* at 3; *see also* ECF No. 1056.) The dispute addressed in this order arose because the Water Master seeks the Court's guidance as to the types of water eligible for repayment credit. (ECF No. 1036.) The Court held a status conference in which it directed the Water Master to file a report more specifically outlining the categories of water he sought guidance on, and permitting the parties, intervenors, and other interested parties to file responses. (ECF No. 1054.) The Water Master filed the requested report

1    (ECF Nos. 1056, 1056-1), the State of Nevada, TCID, Churchill County, and the Fallon

2    Paiute Shoshone Indian Tribe ("Fallon Tribe") filed briefs supporting a broader view of the

3    categories of water for which TCID should receive credit (ECF Nos. 1061, 1062, 1063,

4    1066), and the Pyramid Lake Paiute Tribe of Indians ("Pyramid Lake Tribe") and the United

5    States filed briefs supporting a narrower view of the categories of water for which TCID

6    should receive credit (ECF Nos. 1064, 1065). The Court then held another hearing on the

7    supplemental briefs on September 29, 2020 (the "Hearing"). (ECF Nos. 1067 (setting

8    hearing), 1073 (hearing minutes).) As further explained below, the Court agrees with the

9    United States and the Pyramid Lake Tribe "that [only] planned and voluntary reductions of

10   diversion of water that was legally and physically available to TCID are eligible for

11   recoupment credit and should be subtracted from the available water TCID could have

12   diverted under both OCAP and the safety restrictions at the time of the claimed

13   repayment." (ECF No. 1065 at 18-19.) The Court also provides some additional guidance

14   to the Water Master below.

15   **II.    BACKGROUND**

16         The underlying facts of this case may be found in the Court's order concerning

17   TCID's motion to dismiss (ECF No. 1003-1 at 3-5), and the Court's December 2003

18   decision on the merits (ECF No. 423 at 2-18). The Court thus only recites the facts and

19   procedural background most pertinent to the pending dispute.

20         The Court adjudicates this dispute as part of overseeing enforcement of the TAJ.

21   *See* Fed. R. Civ. P. 70 (giving the Court various tools to enforce a judgment). In the TAJ,

22   the Court entered judgment in the United States and the Pyramid Lake Tribe's favor "for

23   excess spills and diversions [TCID made] in the amount of 344,208 acre-feet." (ECF No.

24   992 at 2.) "Repayment shall be made by [TCID] through reductions of diversions to the

25   Newlands Project from the Truckee River or through water savings or reductions in

26   demand generated by existing and proposed acquisition programs." (*Id.* at 3.)

27         This particular dispute centers primarily on the phrase "reductions of diversions to

28   the Newlands Project from the Truckee River[.]" (*Id.*; *see also* ECF Nos. 1061, 1062, 1063,

2

1064, 1065, 1066.) In his report, the Water Master identifies five categories (each with several sub-categories) of water for which TCID seeks repayment credit that he believes fall within this broader category of "reductions of diversions to the Newlands Project from the Truckee River[.]" (ECF No. 1056-1 at 2-4.) However, the parties who filed responsive briefs to the Water Master's report generally treat the Water Master's five categories as two categories. (ECF Nos. 1061, 1062, 1063, 1064, 1065, 1066.) One category (corresponding to the Water Master's category 1) is TCID's planned and voluntary reductions of diversions that are otherwise physically and legally possible to satisfy its repayment obligations under the TAJ (collectively, "Voluntary Reductions"). (ECF No. 1056-1 at 2-3.) The other category (corresponding to the Water Master's categories 2-5) are instances where TCID did not divert water it was legally entitled to divert under normal circumstances, but where such diversion was physically impossible, or made impossible by Court order or safety limits (collectively, "Involuntary Reductions"). (*Id.* at 3-5.)

That said, the Water Master also seeks guidance on a few other categories of water. More specifically, he seeks guidance on two subcategories of Voluntary Reductions: (a) "Reduced diversions from 350 cfs down to the actual Canal flow, or" (b) "[r]educed diversions from the pre-breach Canal capacity down to the actual Canal flow." (*Id.* at 2-3.) In addition, at the end of his report, he seeks guidance on 'other recoupment credit items for consideration.' (*Id.* at 4.) Those 'other items' are: i. "[w]ater savings or reductions in demand generated by existing and proposed acquisition programs[;]" ("Sustainability Reductions") and ii. "Donner Lake releases of TCID-owned water to Pyramid Lake" ("Donner Lake Water"). (*Id.*)

## III.   DISCUSSION

In the interest of providing the Water Master with guidance sufficient to allow him to carry out his role provided for in the TAJ, the Court will address each of the four categories of water it identified above in this order. For clarity, those categories are: (1) Voluntary Reductions; (2) Involuntary Reductions; (3) Sustainability Reductions; and (4) Donner Lake Water. The Court's approach to each of these four categories aims at equity.

"Equity must be done in this action, and it would be inequitable to bestow a windfall on TCID, 'which is at fault for the excess diversions,' to the detriment of the Tribe and Pyramid Lake, 'which the OCAPs are supposed to protect.'" *U.S. v. Bd. of Directors of Truckee-Carson Irrigation Dist.*, 708 F. App'x 898, 901 (9th Cir. 2017) ("*2017 Opinion*") (citation omitted).

### A. Voluntary Reductions

To start, the parties agree TCID should get credit for Voluntary Reductions. (ECF Nos. 1062 at 4, 1065 at 16.) So does the Court. Voluntary Reductions fall squarely within the plain text of "reductions of diversions to the Newlands Project from the Truckee River[.]" (ECF No. 992 at 3.) Moreover, TCID's adjudicated fault was voluntarily diverting water it should not have diverted. *See 2017 Opinion*, 708 F. App'x at 901. Water that TCID could otherwise divert, but it chooses not to divert to satisfy the TAJ, equitably mirrors TCID's wrongdoing. Thus, TCID should get repayment credit for its Voluntary Reductions, again, otherwise defined as the Water Master's category 1. (ECF No. 1056-1 at 2-3.) The Court accordingly also endorses the United States' definition of that category, "that [only] planned and voluntary reductions of diversion of water that was legally and physically available to TCID are eligible for recoupment credit and should be subtracted from the available water TCID could have diverted under both OCAP and the safety restrictions at the time of the claimed repayment." (ECF No. 1065 at 18-19.)

However, it is somewhat less clear the parties agree as to the Water Master's subcategories of Voluntary Reductions, where the Water Master seeks clarification as to the baseline he should use in calculating the credits TCID should receive for its Voluntary Reductions. (ECF No. 1056-1 at 2-3.) Said otherwise, the Water Master asks whether he should use 350 cubic feet per second ("cfs") as his baseline—reflecting the safety limit imposed on the Truckee Canal by the U.S. Bureau of Reclamation after the canal breached on January 5, 2008 and flooded a residential subdivision in the city of Fernley— or use the Canal's pre-breach capacity as his baseline. (*Id.*; *see also* ECF No. 1065 at 16-17.)

4

The United States proposes the commonsense approach of using the 350 cfs amount as the baseline for the Water Master's calculation when that is the applicable cap. (ECF No. 1065 at 16-17.) The United States similarly proposes "the Water Master should determine the difference between TCID's actual diversion rate and the rate that TCID could have physically and legally diverted at the time of the alleged repayment event." (*Id.* at 17.) Without explicitly saying so, TCID appears to indicate it has no objection to using the 350 cfs baseline, in simply arguing it is still entitled to a significant repayment credit even if the Water Master uses the 350 cfs baseline. (ECF No. 1062 at 4-5.) Thus, to the extent TCID disagrees with the United States on this point, it does not appear to be such a strenuous disagreement.

Regardless, the Court agrees with the United States. The Water Master should use the legal and physical cap to TCID's possible diversions as his baseline. For example, the baseline should be 350 cfs for any of TCID's requested repayment events after the breach that flooded Fernley (because that legal cap was imposed for safety reasons), if more than 350 cfs of water was available in the Truckee River for diversion at Derby Dam (because that means such diversion was physically possible). The Court's decision as to these subcategories thus also aligns with its decision as to Voluntary Reductions explained above—the Water Master should use the physical and legal upper limit of water that TCID could divert as his baseline in calculating reductions.

## B.    Involuntary Reductions

The heart of the parties' current dispute is whether TCID should receive credit for Involuntary Reductions. In gist, the United States and the Pyramid Lake Tribe argue TCID should not get credit for Involuntary Reductions (again, the Water Master's categories 2-5) because such Involuntary Reductions do not counterbalance TCID's inequitable conduct that resulted in the TAJ, and crediting such reductions does not make sense because TCID could not have diverted water it was physically unable to divert. (ECF Nos. 1064 at 3, 10-12, 1065 at 13-15.) TCID and the other interested parties who filed supplemental briefs—the State of Nevada, the Fallon Tribe, and Churchill County—

respond TCID should get credit for Involuntary Reductions because there is no actual difference between Voluntary Reductions and Involuntary Reductions in terms of the amount of water that flows down the Truckee River to reach Pyramid Lake, and the TAJ does not specify that "reductions of diversions to the Newlands Project from the Truckee River" must be intentional or voluntary reductions. (ECF No. 1062 at 5-9.) TCID thus argues it should get credit for all of the water that actually flowed into Pyramid Lake it did not divert, even if TCID was physically unable to divert that water—for example, because of icing. (*Id.* at 5-11.) The Court agrees with the United States and the Pyramid Lake Tribe.

Receiving credit for not doing something physically impossible is inequitable. TCID is subject to the TAJ because it took water it was not allowed to take, for years. (ECF No. 1065 at 13.) To make up for it, TCID must give that water back over time. For equity to be served in this process, TCID must counter its past, voluntary bad acts with subsequent, voluntary good ones. (*Id.*) *See also 2017 Opinion*, 708 F. App'x at 901-02. Moreover, the Court agrees with the United States that it is illogical to give TCID credit for water it could not have diverted even if it wanted to. (ECF No. 1065 at 14.) Doing so would also bestow an inequitable windfall upon TCID. (*Id.* at 15.) *See also 2017 Opinion*, 708 F. App'x at 901-02. It would thus be both inequitable and illogical to give TCID credit for Involuntary Reductions.

In addition, the Court is unpersuaded by TCID's argument that it should not be held to a voluntariness requirement because such a voluntariness requirement is not explicitly written into the TAJ. (ECF No. 1062 at 5.) TCID's argument overlooks that the Court is currently presiding over the execution stage of an equitable proceeding. And the Ninth Circuit has instructed the Court "to ensure that an equitable remedy is available to the United States and the Tribe[.]" *2017 Opinion*, 708 F. App'x at 902. Reading the TAJ not to require voluntary action on TCID's part would not do that. *See id.*

TCID also argues it should get credit for Involuntary Reductions because the practical effect of not crediting Involuntary Reductions is punishing the other interested downstream parties who rely on the water from the Newlands Reclamation Project—

1    including the State of Nevada, Churchill County, and the Fallon Tribe. (ECF No 1052 at 5-

2    6.) There is no question this case "implicates the competing and significant interests of the

3    reclamation system, the Tribe, and the environment." *2017 Opinion*, 708 F. App'x at 902.

4    There is also no question TCID's downstream users will be harmed if less water flows to

5    them. But as reflected in the TAJ, the Court must prioritize the United States and the

6    Pyramid Lake Tribe "to ensure that an equitable remedy is available to the United States

7    and the Tribe[,]" over TCID and its downstream water users. *See id.* Said otherwise, TCID

8    is the party that must repay its debt for the water it took, even if that ultimately leads to

9    less water in the system for the downstream water users. In sum, TCID may not receive

10   repayment credit for Involuntary Reductions.

11           **C.    Sustainability Reductions**

12           To reiterate, these are "[w]ater savings or reductions in demand generated by

13   existing and proposed acquisition programs." (ECF No. 1056-1 at 4.) The United States

14   concedes TCID should get credit for reductions falling within this category, but maintains

15   it is inapplicable to this particular dispute because TCID is not currently claiming any credit

16   for reductions that fall within this category. (ECF No. 1065 at 17.) TCID also mentions it

17   should get credit if it claims reductions falling within this category, but does not appear to

18   be doing so at this time. (ECF No. 1062 at 2.) There thus appears to be no real dispute

19   TCID should get credit for reductions falling within this category, though TCID is not

20   seeking any at this time.

21           But to answer the Water Master's question (ECF No. 1056-1 at 4), TCID should get

22   credit for reductions it presents that fall within this category because it is specifically

23   included in the TAJ (ECF No. 992 at 3), and both sides appear to agree doing so is proper.

24           **D.    Donner Lake Water**

25           The parties' final dispute at this time is whether TCID should get credit for the water

26   it allowed to flow from Donner Lake into Pyramid Lake during the time TCID owned an

27

28

7

1   undivided half interest in the water released from Donner Lake to satisfy the TAJ.[1] (ECF

2   Nos. 1062 at 10-11, 1064 at 13-15, 1065 at 18.) TCID more specifically argues it should

3   get credit for the Donner Lake Water because it owned the water and allowed it to flow to

4   Pyramid Lake expressly to satisfy the judgment in this case, and because Judge McKibben

5   previously gave TCID credit for Donner Lake Water. (ECF No. 1062 at 10-11.) The United

6   States primarily counters that TCID failed to demonstrate Donner Lake Water "could have

7   been diverted into the Truckee Canal under the OCAP or the safety restrictions[.]" (ECF

8   No. 1065 at 18.) The Court agrees with TCID on this particular point.

9        Judge McKibben previously certified TCID's use of Donner Lake Water for "the

10  period February 18, 2005 to February 15, 2006" as counting towards the debt TCID must

11  repay, so it would be contrary to the law of the case for the Court to now disallow credit

12  for Donner Lake Water. (ECF Nos. 554 at 2, 571.) Further, even though the Court

13  suspended certification of credit for Donner Lake Water while TCID's litigation with TMWA

14  was pending, that litigation has since resolved and is thus no longer an impediment to

15  giving TCID credit for Donner Lake Water. (ECF No. 1062 at 3.) Relatedly, TCID appears

16  to have used the Donner Lake Water to attempt to comply with the judgment in this case

17  in good faith. (*Id.*; *see also* ECF No. 554 at 2-3 (noting that "TCID has committed Donner

18  Lake water on an annual basis[,]" and certifying that the Water Master believed, "TCID

19  has made a good faith effort to comply with the court order.").) For these reasons, the

20  Court finds equity is served by permitting TCID to receive credit for Donner Lake Water.

21       The United States and Pyramid Lake Tribe argue TCID should not get credit for

22  Donner Lake Water because Judge McKibben ordered a methodology be developed to

23  account for it, but none ever was. (ECF No. 1065 at 18; ECF No. 1064 at 14.) The pertinent

24  part of Judge McKibben's order "directs the Water Master to consult with the parties and

25  develop a methodology for determining the extent to which future releases of water from

26

27  _____

28       [1]TCID sold its interest in Donner Lake in 2016 to the Truckee Meadows Water
    Authority ("TMWA") to settle litigation with TMWA. (ECF No. 1052 at 3; *see also* ECF No.
    881.)

1    Donner Lake should qualify for credit toward the repayment of the judgment in this action."

2    (ECF No. 571 at 2.) Thus, the unresolved issue was not whether Donner Lake Water

3    should count, but how much of it should count. As the Water Master explained at the

4    Hearing, a methodology was not developed because of the litigation between TCID and

5    TMWA, as well as stays imposed in this case while the parties pursued appeals. (*See also*

6    ECF Nos. 639, 710.) Perhaps more importantly, the Water Master represented at the

7    Hearing he is able to determine how much water TCID released from Donner Lake that

8    actually made it to Pyramid Lake when TCID had rights to some of the water in Donner

9    Lake. This representation resolves the Pyramid Lake Tribe's related argument that TCID

10   has not established how much water actually reached Pyramid Lake. (ECF No. 1064 at

11   14.)

12          The Pyramid Lake Tribe also argues the Donner Lake Water cannot be considered

13   part of an 'existing acquisition program' because TCID acquired the Donner Lake Water

14   well in advance of entry of the TAJ. (*Id.* at 15.) The Court disagrees. The Donner Lake

15   Water is part of the type of 'existing acquisition program' contemplated by the TAJ—water

16   that TCID had already acquired. (ECF No. 1062 at 10-11.) As TCID argues, this "was real

17   water that was not diverted and real water that flowed to Pyramid Lake." (*Id.* at 11.) In

18   sum, and as explained *supra*, TCID should receive credit for the Donner Lake Water. To

19   the extent consideration of the Donner Lake Water was 'on pause,' as the Water Master

20   represented at the Hearing, the Court hereby hits play. The Court leaves it to the Water

21   Master to calculate the precise amount of Donner Lake Water TCID should receive credit

22   for in presenting his future certifications of recoupment credits for Court approval.

23   **IV.    CONCLUSION**

24          The Court notes that the parties made several arguments and cited to several cases

25   not discussed above. The Court has reviewed these arguments and cases and determines

26   that they do not warrant discussion as they do not affect the outcome of the issues before

27   the Court.

28   *///*

1        It is therefore ordered that the Water Master should use the decisions in this order

2 in calculating TCID's recoupment credits under the TAJ.

3        DATED THIS 1st day of October 2020.

_____

MIRANDA M. DU
CHIEF UNITED STATES DISTRICT JUDGE